## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

DAVID F. SUND,

  Plaintiff,

  v.

MARRIOTT INTERNATIONAL, INC.,

  Defendant.

Civil Action No. TDC-19-2806

## MEMORANDUM OPINION

Plaintiff David F. Sund has filed a civil action against Defendant Marriott International, Inc. ("Marriott") arising out of an injury he suffered at a hotel located in Shenzhen, China that resulted in a lumbar fracture of his vertebrae. Marriott has filed a Motion to Dismiss Under the *Forum Non Conveniens* Doctrine, which is now fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be DENIED.

## BACKGROUND

### I. The Incident

In August 2018, Sund, who was then a resident of San Jose, California, traveled to Shenzhen, China, for a business trip on behalf of his employer, Amazon.com, Inc. ("Amazon"). Because Amazon had a global policy that governed employee travel, employees were required to make travel arrangements, including hotel reservations, through Amazon's travel agency. Amazon had a negotiated agreement with Marriott through the Marriott Strategic Partnership Program that provided Amazon employees with special preferred rates at all Marriott hotels and all hotels

operating under affiliated brands, including Sheraton.  For his trip to Shenzhen, Sund booked a stay at the Sheraton Shenzhen Futian Hotel ("the Hotel"), which is owned and operated by Marriott.

On August 21, 2018 at approximately 5:00 p.m., Sund exited the Hotel into the covered outdoor lobby area, which consists of brown marble flooring and is located between the hotel door and the carport.  When Sund stepped into this area, which was wet at the time, his feet slipped out from under him, and he landed on his tailbone.  According to Sund, he heard a crack when he landed and was immediately in excruciating pain and unable to get up.  Hotel employees helped Sund to his hotel room but did not immediately call for an ambulance.

Once back in his room, Sund felt that the pain from his fall was unbearable. After Jack Zhou, an Amazon colleague, arranged for an ambulance, Sund was transported to a local hospital. Doctors at that hospital determined that Sund had suffered a lumbar fracture.  The next day, on August 22, 2018, Sund was transferred to Mathilda Hospital in Hong Kong, where he remained for over three weeks.  On September 13, 2018, Sund, who still had significant pain and had to wear a back brace and use crutches to move around, was discharged and returned back to the United States.  Once back in California, Sund received care and treatment at the Kaiser Permanente San Jose Medical Center.

According to Sund, because of his injuries from the fall at the Hotel, he was unable to return to work at Amazon and was eventually placed on permanent disability.  Despite treatment and physical therapy, Sund still suffers from ongoing pain, which limits his ability to sit for any extended period of time or to move and perform ordinary activities, such as making his bed or doing laundry, without significant pain.  Sund continues to receive medical treatment for symptoms caused by the fall.

## II.      Procedural History

Sund, who is now a citizen and resident of Oregon, has filed the present action against Marriott, whose corporate headquarters and principal place of business are in Bethesda, Maryland, alleging state common law tort claims based on negligence.  Sund asserts that Marriott breached its duty to Sund as an invited guest on the Hotel's premises by failing to maintain the covered outdoor area in a reasonably safe condition, including by failing to post warning signs stating that the ground would be slippery when wet and by failing to use mats or treads to alleviate the danger posed by the slippery surface.  Sund seeks damages for health care costs and other expenses resulting from the injury, lost earnings, pain and suffering, emotional distress, and loss of enjoyment of life.

**DISCUSSION**

In its Motion, Marriott seeks dismissal under the doctrine of *forum non conveniens*. Specifically, Marriott argues that because Sund's injury occurred abroad in the People's Republic of China ("PRC"), a Chinese court would provide an adequate forum to resolve the dispute, and the balance of interests favors that forum in significant part because Marriott would be unable to compel China-based witnesses to testify in this Court.  In opposing the Motion, Sund argues that a Chinese court does not provide an adequate forum and that the balance of interests favors Sund's chosen forum of the United States District Court for the District of Maryland.

## I.      Legal Standard

*Forum non conveniens* is a common law doctrine employed by federal courts to dismiss a case if convenience requires it to be litigated in an alternative forum in a foreign nation.  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007).  In order to determine whether such dismissal is appropriate, the Court must assess whether a proposed alternative forum is (1)

3

available; (2) adequate; and (3) more convenient in light of the public and private interests involved. *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir. 2011). The moving party bears the burden of proving availability, adequacy, and overall convenience of an alternative forum. *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 800–01 (4th Cir. 2013).

## II.      Availability

To challenge the plaintiff's chosen forum under *forum non conveniens*, a defendant must first demonstrate that an alternative forum is available. Availability is ordinarily satisfied when the "defendant is amenable to process in the other jurisdiction." *Jiali Tang*, 656 F.3d at 249 (quoting *Piper Aircraft Co. v Reyno*, 454 U.S. 235, 255 n.22 (1981)).

Marriott has stated that it is amenable to process in Shenzhen, China and has consented to jurisdiction there. Sund does not challenge this assertion. Therefore, the PRC is an available forum. *See id.*; *see also Doe v. Ritz Carlton Hotel Co.*, *LLC*, 666 F. App'x 180, 183 (3d Cir. 2016) (affirming the district court's finding of adequacy where the hotel defendant was amenable to service in the foreign forum).

## III.      Adequacy

A defendant must also demonstrate that the available alternative forum is adequate. A foreign forum is considered adequate when "(1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Jiali Tang*, 656 F.3d at 249 (quoting *Fid. Bank PLC v. N. Fox Shipping N.V.*, 242 F. App'x 84, 90 (4th Cir. 2007)). It is only in "rare circumstances" that a remedy offered by an alternative forum will be deemed "clearly unsatisfactory" such that the alternative forum will be deemed inadequate. *Id.* (quoting *Piper Aircraft*, 454 U.S. at 254 n.22).

Here, the parties dispute whether the PRC constitutes an adequate forum.  Marriott has offered the expert opinion of Professor Randall Peerenboom, a former Professor of Law at UCLA with extensive knowledge of Chinese law and philosophy, who asserts that the PRC provides adequate legal remedies and fair processes for litigation.  In support of this opinion, Peerenboom states that Chinese law would support a tort action comparable to Sund's claims in this Court because it recognizes tort liability arising from the management of a public space and against a principal for the actions of an agent.  Because the applicable Chinese statute of limitations is three years, Sund is not time-barred from filing his case in China.  Peerenboom also asserts that civil courts in Shenzhen, China are capable and experienced in civil litigation proceedings, including those involving foreign litigants.

Sund acknowledges that the PRC provides an applicable tort cause of action for breach of the duty to maintain safe public premises.  Nevertheless, Sund asserts that the PRC is inadequate as a forum because the procedures and remedies available, or unavailable, to Sund would effectively deprive Sund of "all opportunity to seek redress for his injuries."  Opp'n Mot. Dismiss at 11, ECF No. 31.  To substantiate his point, Sund compares his potential recovery under American law with his potential recovery under Chinese law.  In particular, Sund highlights that tort law in the PRC does not allow recovery for damages for physical pain and suffering or future wage loss and asserts that given the conservative approach of judges in the PRC, recovery for medical expenses, emotional distress, and other compensatory damages would be severely limited and thus inadequate.  Sund also argues that because Chinese law does not allow for discovery comparable to that available in American courts and requires plaintiffs to rely almost entirely on documentary evidence, he would effectively be denied access to all the necessary evidence to prove his case.

Sund's analysis is flawed.  First, in cases arising under diversity jurisdiction such as this one, a district court applies the conflict-of-law rules of the state in which it sits.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  For tort claims, Maryland law applies the principle of *lex loci delicti*, under which the applicable law is that of the state or country in which the last event or action necessary to make a defendant liable for an alleged tort occurred.  *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999).  Because Sund's injury occurred in the PRC, even if this case proceeds in this Court, Chinese law would likely govern the eventual determination of Marriott's liability and resulting damages.

Second, and more importantly, the crux of the issue of adequacy is whether the "Chinese forum offers a remedy and process for resolving the dispute."  *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 204 (4th Cir. 2009).  Here, the parties agree that Chinese law provides causes of action that are of the same kind brought in federal district court.  Sund instead argues that he would be disadvantaged by the procedural rules of the PRC's litigation system and limitations on damages under Chinese law.  However, although the unfavorable nature of the applicable law in an alternative forum may be a relevant consideration in a *forum non conveniens* analysis, the United States Supreme Court has rejected the notion that a forum may be deemed inadequate "merely by showing that the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum."  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 246, 254 (1981).  "[A] difference in the law in the two forums—even where the amount of potential recovery is drastically different—is not sufficient to bar application of the *forum non conveniens* doctrine."  *Compania Naviera Joanna*, 569 F.3d at 202.  Rather, inadequacy arises "where the alternative forum does not permit litigation of the subject matter of the dispute" or where the remedy in the alternative forum "is so clearly inadequate

or unsatisfactory that it is no remedy at all." *Piper Aircraft*, 454 U.S. at 254 n.22.  Thus, in conducting the adequacy analysis, courts are not supposed "to compare the rights, remedies, and procedures available under the law that would be applied in each forum." *Compania Naviera Joanna*, 569 F.3d at 204 (quoting *Piper Aircraft*, 454 U.S. at 251).

In *Piper Aircraft*, a case in which Scottish citizens filed suit in the United States in a case arising from a plane crash in Scotland, the Supreme Court applied these principles in concluding that even though American law provided for strict liability while Scottish law did not, the Scottish forum was nevertheless adequate.  *Piper Aircraft*, 454 U.S. at 239, 246.  Likewise, in *Compania Naviera Joanna*, the United States Court of Appeals for the Fourth Circuit found that in a case involving a collision between a Panamian ship and a Netherlands ship in Chinese territorial waters, the Chinese forum was adequate even though Chinese law provided for a fund of only $20 million from which to pay damages as compared to a damages fund in the United States of $111 million, and the anticipated recovery under Chinese law would be less than $1 million as compared to the moving party's estimated damages of $326 million.  *Compania Naviera Joanna*, 569 F.3d at 197, 203–04.  Likewise, where a legal remedy exists in China, Sund's argument that under the applicable Chinese law and procedural rules he would have greater difficulty proving liability and would likely receive lower damages does not provide a basis to conclude that the Chinese forum is inadequate.  The Court therefore finds that Marriott has satisfied the requirement of identifying an adequate alternative forum.

## IV.     Balance of Interests

Having found an available and adequate alternative forum, the Court must assess the relevant private and public interests to determine whether the convenience of the alternative forum warrants dismissal.  *Jiali Tang,* 656 F.3d at 248.

### A.      Plaintiff's Choice of Forum

Ordinarily, the party seeking dismissal under *forum non conveniens* "must make a showing that the relevant public and private interests *strongly favor*" the alternative forum. *DiFederico*, 714 F.3d at 802 (quoting *Jiali Tang*, 656 F.3d at 246). Accordingly, there is a strong presumption in favor of the plaintiff's choice of forum such that it is entitled to deference. *Piper Aircraft*, 454 U.S. at 255.

The Supreme Court has held that the plaintiff's choice of forum is "entitled to greater deference" when it is the plaintiff's "home forum" because it is reasonable to assume that that particular choice of forum is convenient. *Id*. at 255–56; *see DiFederico*, 714 F.3d at 803. For an American citizen plaintiff, when the proposed alternative forum is in a foreign nation, the "home forum" is any federal district court in the United States. *See DiFederico*, 714 F.3d at 803 n.4. Relatedly, where the defendant claiming that a foreign forum is more convenient is a resident and citizen of the plaintiff's chosen forum, courts should closely consider that fact as weighing against dismissal. *See Galustian v. Peter*, 591 F.3d 724, 732 (4th Cir. 2010). Thus, deference to the original choice of forum is at its greatest when the plaintiff has chosen to bring the case in the plaintiff's home forum *and* the defendant is a resident and citizen of the forum it now seeks to have declared inconvenient for litigation. *See id.*; *see also Loring v. Southern Air Charter Co., Ltd.*, No. PX-16-3844, 2018 WL 3122440, at *5 (D. Md. June 26, 2018) (stating that under such circumstances deference to the plaintiff's choice of forum is "particularly acute"), *appeal dismissed*, 738 F. App'x 227 (4th Cir. 2018).

In *DiFederico v. Marriott International, Inc.*, 714 F.3d 796 (4th Cir. 2013), a case in which a plaintiff filed suit against Marriott in the United States District Court for the District of Maryland asserting claims arising from a terrorist attack at a Marriott hotel in Pakistan, the court applied and

expanded on these principles. *Id.* at 799, 802–03. The court held that "[a] citizen plaintiff's choice is presumptively convenient . . . and should be overridden only when the defendant establishes such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Id.* at 803 (quoting *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)). "As long as there is a real showing of convenience by a plaintiff who has sued in his home forum [it will] normally outweigh the inconvenience the defendant may have shown." *Id.* "Courts considering a motion to dismiss under *forum non conveniens* against a citizen plaintiff choosing her home forum must apply this increased deference in their analysis." *Id.* Notably, in *DiFederico*, where the plaintiffs were American citizens filing suit in an American federal court, and Marriott is an American corporation that had been sued in the federal court in Maryland, the state of its principal place of business, the Fourth Circuit found that the district court had erred in failing to apply this standard of deference to the plaintiff's choice of forum. *See id.*

Here, Sund has likewise filed suit in a district that is his home forum, as he is an American who has chosen a federal district court that is likely the only district in which there is personal jurisdiction. *See DiFederico*, 714 F.3d at 803 n.4; *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 132 (4th Cir. 2020) (rejecting the argument that Marriott is subject to general jurisdiction in all states in which its hotels are located and holding that Marriott was not subject to general jurisdiction in South Carolina where "it does business but where it is not incorporated or headquartered"). This forum is also the home forum of Marriott, which is headquartered in Maryland. Under these circumstances, Sund's choice of forum is entitled to the highest level of deference. *See DiFederico*, 714 F.3d at 803; *Galustian*, 591 F.3d at 732.

**B.      Private Interests**

The factors relating to the parties' private interests include (1) "the relative ease of access to sources of proof"; (2) the "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses"; (3) the possibility of a view of the premises, if a view would be "appropriate"; and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Piper Aircraft*, 454 U.S. at 241 n.6; *Jiali Tang*, 656 F.3d at 249.  In order to examine the relative ease of access to sources of proof and the availability of witnesses, "the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988).

**1.      Sources of Proof**

In this case, Sund is alleging that Marriott breached its duty of care to its hotel guests by failing to properly maintain and render safe the marble flooring outside the front entrance of the Hotel and failing to provide warnings that the area would be slippery when wet.  Thus, the relevant facts relate to the conditions of the Hotel entrance area at the time of the incident, Hotel personnel's knowledge of those conditions, what actions Hotel personnel did or did not take with respect to those conditions prior to the incident, Sund's fall and its immediate aftermath, and the nature and extent of Sund's injuries.

As to sources of proof other than witnesses, Marriott does not identify any specific documents or physical evidence relating to liability that would be unavailable or difficult to obtain for use in a trial in this Court.  Although documents relating to the maintenance and care of the Hotel's premises, records relating to similar past incidents, and any documents produced in the

course of any investigation into Sund's fall, would presumably be located at the Hotel, Marriott would have access to such evidence and, in fact, has acknowledged in its reply brief that it could provide such documents to Sund under certain conditions.  Significantly, in response to a request from Sund's counsel, Marriott's counsel confirmed that security video footage that recorded Sund's fall outside the Hotel was preserved by the Hotel and thus is accessible to Marriott for use at trial.  Therefore, Marriott has not shown that the present forum thwarts its ability to access any physical or documentary evidence relating to liability.  *See SAS Inst., Inc. v. World Programming Ltd.*, 468 F. App'x 264, 266 (4th Cir. 2012) (finding that the defendant's inability to identify "specific record evidence" that would be unavailable other than providing "a single barebones declaration observing that most . . . employees and documents [were] located in the U.K" was unpersuasive to the court on the issue of *forum non conveniens*); *Loring*, 2018 WL 3122440 at *7 (denying a motion to dismiss on *forum non conveniens* seeking to have a case arising out of plane crash in the Bahamas litigated in that forum rather than in the District of Maryland in part because "many of the pertinent documents are in the Defendants' possession or should be easily available to them").

On damages, although production of medical records from Sund's treatment in China may require a letter rogatory or other request to the Chinese government, Sund already has copies of at least some of his medical records from the hospitals in Shenzhen and Hong Kong.  All records from Sund's medical treatment in the United States are more easily obtained for litigation in the United States than for use in China.  Thus, although most of the relevant documentary evidence appears to be in China, the Court concludes that under the circumstances of this case, most, if not all, would be accessible for use in the United States.

As for whether the relevant documents would be accessible for use in China, Sund and Marriott disagree about whether the PRC's rules of civil procedure would allow Sund to compel production of documentary evidence in Marriott's possession that is not favorable to Marriott. However, where Marriott has agreed to accept a ruling that would condition dismissal on document production under American standards, the Court finds that the relevant documents would be accessible for use in the Chinese forum.

In summary, the Court finds that although this factor slightly favors Marriott's alternative forum, it does little to tip the balance in favor of the Chinese forum.

### 2. Witnesses

Marriott's argument that the present forum is inconvenient focuses primarily on the inconvenience to witnesses in China and the fact that certain witnesses cannot be compelled to travel to Maryland to testify. Marriott claims this difficulty arises as to not only eight specific witnesses it has identified as having first-hand knowledge of the incident and its aftermath, but also the medical personnel in Shenzhen and Hong Kong who provided care to Sund following the incident. In particular, Marriott asserts that five of the witnesses no longer work for Marriott or are otherwise outside of Marriott's control, and one has specifically stated that she is not willing to travel to the United States to testify in the case. Although deposition testimony would be admissible in this Court, Marriott asserts that PRC law bars attorneys from taking depositions of witnesses located in China for use in a foreign court. Finally, Marriott identifies additional potential obstacles to witness testimony, including the difficulty of obtaining a visa to enter the United States and the costs of travel.

Although Marriott is correct that this factor favors the Chinese forum, it has not shown that it heavily outweighs the convenience of this forum to the plaintiff overall. First, Marriott has

effectively acknowledged that two of its witnesses remain employed by Marriott and would be available, including Chandler Tian, the chief concierge, who responded to the incident and assisted Sund in returning to his hotel room, and Akema Yan, a bellman who went to the hospital to check on Sund's condition the day after the incident.  Kevin Cheng, the Hotel's Director of Security and Risk Management who was on duty at the time of the incident, is "familiar with the circumstances of the accident and its aftermath" and presumably would also be available to testify.  Cheng Decl. ¶ 2, Mot. Dismiss Ex. 1, ECF No. 26-2.  Sund's colleague, Jack Zhou, who assisted Sund in securing an ambulance, is based in China but has stated that he would be willing to come to the United States to testify.

As to Marriott's remaining witnesses, although Marriott is correct that federal courts "lack[] authority to compel the attendance of Chinese witnesses," *Jiali Tang*, 656 F.3d at 252, Marriott has not shown that these witnesses are indispensable to its case.  The Court must examine the "materiality and importance of an anticipated witness's testimony" in addition to determining the "witness's accessibility and convenience to a particular forum."  *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335–36 (9th Cir. 1984).  These witnesses include Bob Chen, a security guard who was the first to respond to the incident; East Su, a fire manager who accompanied Tian in responding to the scene and helping Sund to his room; Allen Jia, the guest service manager, who suggested that Sund go to the hospital; and Donna Yu and Ken Wu, who went to Sund's room to check on him before Yu called an ambulance and Wu went with Zhou and Sund to the hospital. In the proffered information, however, Marriott has not articulated how any of these witnesses would provide material evidence on liability, as none are offered as eyewitnesses to the incident itself, and none would testify about the condition of the marble flooring prior to the incident. Where Sund has not claimed that the Hotel's response in the aftermath of the incident was

inadequate and does not dispute that he initially refused to go to the hospital, and Marriott does not argue that Sund did not actually sustain injuries from the fall that evening, these witnesses appear to be of limited relevance, and some would likely offer testimony that is cumulative of the testimony of other witnesses.

Moreover, Marriott has only confirmed that one witness, Yu, is unwilling to travel to the United States to testify.  Apart from this individual, Marriott only vaguely states that "at least some" of the witnesses necessary for a fair trial "will be absent at trial."  Mot. Dismiss at 14, ECF No. 26-1.  *See DiFederico*, 714 F.3d at 807 (stating that the unavailability of witnesses "should be given little weight in the overall balancing scheme when the defendant has not shown that any witness is actually unwilling to testify").  Marriott has offered no facts showing that any particular medical witnesses from the Chinese hospitals would be needed to testify to material facts necessary to Marriott's case or would actually be unavailable.  Further, Marriott has not asserted that Yu or any of the other witnesses would be unavailable for a deposition in Hong Kong, which Sund's expert witness, George W. Conk, an attorney and senior fellow at Fordham Law School with expertise in Chinese law, asserts may be conducted pursuant to the common law system there.

As to the availability of his witnesses in China, although Sund and his American physicians would be significantly inconvenienced by having to travel to China, he does not argue that any witness in the United States would be unavailable.  He argues, however, based on the declarations of Conk and expert witness Miaoqing Lu, a Chinese attorney who has litigated tort cases in Chinese courts, including those in Shenzhen, that Chinese courts primarily focus on documentary evidence and that there may be no opportunity to present witnesses.  While this fact, if true, would arguably limit the availability of witnesses to both sides, it would reduce the comparative significance of the possible unavailability of Marriott's witnesses in the United States.

Although the Court finds that the factor relating to witnesses favors the Chinese forum, where only a single witness has been identified as unwilling to travel for testimony, and the identified witnesses appear to be of limited relevance to the case, this factor does not overwhelmingly favor that forum.

### 3.     View

As to the possibility of a view of the premises, a view would plainly be unavailable to the court or the jury in the present forum.  However, the need for a view is unclear.  First, video footage of the accident exists.   Second, Sund has also provided multiple photographs of the scene, including close-up views of the marble flooring from different angles, and Marriott could offer photographs of its own.  The Court further notes that it has not typically conducted a jury view of the scene in comparable cases arising within this District.  It is also unclear whether a view is permitted or would be conducted were the case to proceed in the Chinese forum.  Therefore, while this factor favors the alternative forum, it does so only to a limited degree.  *See Jiali Tang,* 656 F.3d at 252 (noting that "the locus of alleged wrongful conduct is just one of several" interests to balance); *Loring,* 2018 WL 3122440, at *7 (in denying a motion to dismiss based on *forum non conveniens,* finding that it would be unnecessary to conduct an inspection of the site of the airplane crash).

### 4.     Other Factors

There are other factors that the Court should consider in its assessment of forum convenience.  First, Marriott asserts that conducting this case in China is preferable because it may need to implead Shenzhen Youjieya ("Youjieya"), a contractor that Marriott claims to be responsible for cleaning the area where the accident occurred.  *See Piper Aircraft,* 454 U.S. at 259 ("The District Court correctly concluded that the problems posed by the inability to implead

potential third-party defendants . . . supported holding the trial in Scotland.").  However, beyond the general assertion that this contractor had responsibility for cleaning that area, Marriott has not provided additional facts supporting the notion that Youjieya may be liable in this case, particularly where Sund has disavowed any claim that a spill or moisture from a recently mopped floor caused his fall.  Where Marriott has the burden to establish inconvenience, it has not provided sufficient information about Youjieya's responsibilities and potential liability to permit the Court to give any significant weight to Marriott's claim of a need to implead a company outside the jurisdiction of the United States.

Second and more importantly, the relative convenience to the parties themselves weighs against dismissal.  As the Fourth Circuit has previously noted in denying a motion to dismiss on *forum non conveniens* in another case against Marriott, this "is not a case where the plaintiff is a corporation doing business abroad that should expect to litigate in foreign courts." *DiFederico*, 714 F.3d at 807.  Here, while Sund is a 67-year old individual whose only tie to China was occasional business travel there for a company for which he no longer works, Marriott is a sophisticated international hotel company with permanent operations in China and around the world, but whose headquarters is in Maryland.  Plainly, it is markedly less convenient for Sund to learn and navigate the legal system in China than it is for Marriott to litigate in its local federal court.

In particular, consideration of the additional costs that Sund would have to undertake to litigate in China, even as compared to the additional costs to Marriott in litigating in the United States, weighs in favor of the present forum.  Although it is unclear what form of evidence of Sund's injuries and damages would be accepted in China, Sund would have to incur some combination of the expenses of translating and notarizing hundreds of pages of American medical

records into Chinese, the expenses of having his doctors travel to China, or the time and expense

associated with personally traveling to China and arranging for an evaluation by a Chinese doctor.

*See Jones v. IPX Int'l Equatorial Guinea, S.A.*, 920 F.3d 1085, 1092 (6th Cir. 2019) (considering

the cost of witness attendance in the foreign forum); *Duha v. Agrium,* Inc., 448 F.3d 867, 876 (6th

Cir. 2006) (considering the costs of translation of foreign language documents).  While Marriott

would also have travel expenses for its witnesses as well as translation costs, the cost factor would

have a more significant impact on Sund than on Marriott.  *Cf. Rivendell Forest Prod., Ltd. v.*

*Canadian Pac. Ltd*., 2 F.3d 990, 994 n.7 (10th Cir. 1993) (stating that the shifting of costs may be

a relevant consideration when the moving party has substantially fewer financial resources than

the non-moving party).  Courts have recognized that imposing obligations on "an individual of

modest means to litigate in a foreign country is likely to represent a considerably greater obstacle

than for a large business organization—especially one maintaining a business presence in foreign

countries." *Carey v. Bayerische Hypo-Und Vereinsbank*, 370 F.3d 234, 238 (2d Cir. 2004).

The inconvenience of the alternative forum to Sund is even more pronounced upon

consideration of Sund's health.  Sund asserts that because of the ongoing effects of the injury he

sustained at the Hotel, travel to the PRC for this case would not only be very inconvenient but

would also be more expensive because of necessary accommodations and would impose

significant physical and emotional pain on him.  According to Sund, he suffered a compression

fracture of his vertebrae and likely will experience pain for the rest of his life.  He needs to recline

once per hour for at least 20 minutes.  He has difficulty lifting or bending and has to lie down

intermittently throughout the day.  As discussed above, this condition forced him to stop working

at Amazon.  Then, in December 2019, Sund experienced back spasms while descending the stairs

in his home, and as a result of another fall, broke his foot, which has required a foot brace, crutches, and potentially surgery in the future.

Marriott counters that because Sund resides in Oregon, he would still have to travel across the United States by air or over the course of several days by train to attend proceedings in the District of Maryland.  However, the inconvenience of travel cannot simply be measured by the number of hours expended in transit—there must also be consideration of the other realities associated with traveling internationally, such as navigating international borders, meeting personal needs in an unfamiliar culture, and risking the need to again obtain medical care in a foreign country if Sund were to be injured once more because of his limited mobility.  The Court agrees with Sund that where traveling to China would require him to endure 21 hours of travel and multiple legs of the journey in a fragile physical state, stay in a foreign country during the court proceedings, and potentially require him to seek medical treatment in China again, the forum in China is significantly less convenient for him than for the typical American plaintiff.

### C.      Public Interests

The Court must also consider public factors bearing on the issue of convenience, which include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft*, 454 U.S. at 241 n.6; *Jiali Tang*, 656 F.3d at 249.  In evaluating these factors, the court must consider the locus of the alleged culpable conduct and the connection that conduct has to the chosen forum. *Van Cauwenberghe*, 486 U.S. at 528.

The public factors generally weigh in favor of the present forum.  Neither party asserts that the issue of court congestion favors either forum.  Although the specific incident giving rise to Sund's claim occurred in China, there is a local interest in resolving this case in Maryland.  In *DiFederico*, a case involving a tort occurring at a Marriott hotel in a foreign country, the United States Court of Appeals for the Fourth Circuit found a localized interest because "to the extent that Americans recognize and utilize the Marriott brand, Americans have a localized interest in resolving a dispute related to Marriott."  *DiFederico*, 714 F.3d at 807.  This point is particularly applicable in the present case, where Sund has asserted that he specifically chose to stay at a Marriott-owned hotel, a Sheraton, because it is an American brand, and his company, Amazon, required its employees to stay at certain hotels in part for safety reasons.  Amazon Global Travel Policy at 1, Sund Decl. Ex. A, Opp'n Mot. Dismiss Ex. 1, ECF No. 31-1.  Moreover, this is not a case in which neither the incident nor the parties have any meaningful connection to the chosen forum.  *See, e.g.*, *Compania Naviera Joanna*, 569 F.3d at 201 (affirming the dismissal, based on *forum non conveniens*, of a case filed in the Middle District of North Carolina involving a collision in Chinese territorial waters between ships owned and chartered by Panamanian, Swiss, and Netherlands corporations); *Jiali Tang*, 656 F.3d at 246, 253 (affirming the dismissal, based on *forum non conveniens*, of a case filed in the District of Maryland by Chinese plaintiffs alleging harm from tainted infant formula manufactured in China by 22 Chinese companies, one of which was a subsidiary of an Illinois corporation).  Ultimately, this is a case of serious injury to a United States citizen allegedly caused by the acts and omissions of employees or agents of a Maryland corporation.  Thus, there is a clear public interest in resolution in Maryland.  *See DiFederico*, 714 F.3d at 807; *Reid-Walen v. Hansen*, 933 F.2d 1390, 1400 (8th Cir. 1991) ("The defendant's home forum always has a strong interest in providing a forum for redress of injuries caused by its

citizens"); *see also Loring*, 2018 WL 3122440, at *7 (finding that there was a specific public interest in resolving a case involving death and injury to United States citizens in a plane crash in the Bahamas allegedly caused by the acts or omissions of a Maryland corporation).

For the same reasons, there is no unfair burden arising from having a Maryland jury hear this case. While it is true that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation," *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947), the citizens of Maryland have a clear interest in resolution of a dispute alleging misconduct by Marriott, a business headquartered in the state that operates hotels both in Maryland and across the United States. As the Fourth Circuit stated in finding a jury interest in hearing the case in *DiFederico*: "This is a case of American citizens suing an American corporation. The defendant is a corporate member and employer within the community where this case would be tried. A Maryland jury has a strong interest in deciding this case." *DiFederico*, 714 F.3d at 808.

As for the remaining public factors, while it appears likely that the Court will have to apply Chinese law to resolve this case, and this District is not "at home" with Chinese law, *Piper Aircraft*, 454 U.S. at 241 n.6, the burden and difficulty of applying foreign law marginally weighs in favor of Marriott. However, "it is not enough to push the balance strongly in favor of Marriott in the overall inquiry." *DiFederico*, 714 F.3d at 808. Federal courts, if required, are fully capable of interpreting and applying foreign law if necessary, so the need to do so is not itself a reason to dismiss a case under *forum non conveniens. Id.* (finding that the district court overstated the hardship of applying foreign law and erred in finding that it weighed in favor of dismissal); *see also Manu Int'l, S.A. v. Avon Prods., Inc.*, 641 F.2d 62, 67–68 (2d Cir. 1981)) ("[W]e must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform."). "This is precisely the kind of work American judges perform on a daily

basis." *DiFederico*, 714 F.3d at 808.  On balance, therefore, the Court finds that the public factors weigh against dismissal.

### D.        Weighing of Factors

The "ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice."  *Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947). Upon consideration of all of the factors, the Court finds that while certain private factors, such as the availability of witnesses, favor the forum in China, there are sufficient sources of proof, including a surveillance video, documents, and known available witnesses, that make a trial in the present forum fully viable.   Other private factors, such as the convenience to the parties, particularly in light of Sund's health challenges that make travel to China exceedingly difficult and the additional expenditures of time and money that Sund would have to incur in litigating in China, favor keeping the case in this Court.  Where this case involves two American parties in the defendant's home forum, the public factors weigh in favor of the present forum.

In the end, because the plaintiff has chosen his home forum, the bar to justify dismissal on *forum non conveniens* is exceedingly high.  As discussed above, "[a] citizen plaintiff's choice is presumptively convenient . . . and should be overridden only when the defendant establishes such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *DiFederico*, 714 F.3d at 803.  "[A] real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown."  *Koster*, 330 U.S. 518 at 524.  Even with the potential for some evidentiary challenges, Marriott has not shown that litigating this case in its home forum would impose disproportionate "oppressiveness and vexation" upon it, as it might if the defendant were an individual Chinese citizen from Shenzhen.  *DiFederico*, 714 F.3d at 803.

In light of the significant health and economic challenges that make litigating in China prohibitively difficult for Sund, the Court finds that there is real convenience to the American forum that is not merely "slight or nonexistent" to him.  *Id.*  Accordingly, the Court will deny the Motion to Dismiss under the *forum non conveniens* doctrine.

## CONCLUSION

For the foregoing reasons, Marriott's Motion to Dismiss Under *Forum Non Conveniens* will be DENIED.  A separate Order shall issue.


Date:  April 30, 2020                            /s/ *Theodore D. Chuang*
                                                 THEODORE D. CHUANG
                                                 United States District Judge